746 A.2d 923

**Benjamin K. MERRITT, et ux.**

**v.**

**Virginia S. CRAIG, et al.**

**No. 5831, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 2, 2000.

Reconsideration Denied March 28, 2000.

Robert Reinhart (Walsh, Walsh & Reinhart, P.C., on the brief), Cumberland, for appellants.

Stephen C. Wilkinson (Wilkinson & Staebler, LLC, on the brief), Cumberland, for appellees.

Argued before DAVIS, THIEME and KENNEY, JJ.

DAVIS, Judge.

In February 1997, appellants Benjamin K. and Julie S. Merritt, owners of real property located at Pergin Farm Road,

Swanton, Maryland, in Garrett County, filed a five-count complaint against appellees Virginia S. Craig (Craig), David Huebner, d/b/a Coldwell Banker/Deep Creek Realty, Dennis Hannibal, Edward Knight, and Thomas N. Janes, Trustee for First Federal Savings Bank of Western Maryland, seeking rescission of the contract of sale and the deed to the property along with compensatory and punitive damages.[1] The first two counts of appellants' complaint were against Craig for fraudulent and negligent misrepresentation. In Count III, appellants claimed that Craig violated Maryland's Consumer Protection Act by fraudulently and negligently misrepresenting the property in Garrett County.[2] Following discovery, appellants filed a motion requesting a jury trial. In response, appellees filed a motion seeking a court trial on the grounds that rescission is an equitable remedy and does not entitle the litigants to a jury trial. On April 21, 1998, the Circuit Court for Garrett County denied appellees' motion, and the claim proceeded to trial.

At the conclusion of the trial, the jury returned a verdict in favor of appellants and awarded compensatory damages in the amount of $42,264.76 and punitive damages in the amount of $150,000. Subsequently, appellants filed a Motion to Alter or Amend Judgment, requesting the court to consider their rescission claim. Appellees filed a Motion for Judgment Notwithstanding Verdict regarding the issue of punitive damages. After a hearing, the trial court denied both motions. Appel-

---

1. This case is on appeal only against Craig. A consent decree was entered in favor of First Federal Bank of Western Maryland, holder of appellants' mortgage. The remaining appellees were dismissed on a motion prior to trial and are not parties to this appeal.

2. The Maryland Consumer Protection Act prohibits engaging in any unfair or deceptive trade practices, including doing so in the sale or offer for sale of consumer realty. "[A]ny person may bring an action to recover for injury or loss sustained by him [or her] as the result of a practice prohibited by [the Act]." *See Sonnenberg v. Security Management Corp.*, 325 Md. 117, 131, 599 A.2d 820 (1992) (quoting MD.CODE (1990 Repl.Vol.), Comm. Law (C.L.) § 13–408(a)). Attorney's fees may also be awarded under the Act if claimant is successful. *Id.* Counts IV and V were brought by appellants against the other defendants and are not a part of this appeal.

lants timely noted this appeal and present for our review one question, which we restate as follows:

I. Did the circuit court err in denying the remedy of rescission based on appellants' election of a jury trial?

Appellees timely filed a cross-appeal presenting the following question, which we restate:

II. Did the circuit court err by allowing the jury award for punitive damages to stand, and was the award excessive?

We answer the first question in the affirmative and therefore reverse the circuit court's judgment; we address the second question for guidance of the lower court on remand.

## FACTUAL BACKGROUND

In the fall of 1995, during their search for a new residence, appellants inspected Craig's property located at Pergin Farm Road in Garrett County. After viewing the residence, appellants advised Craig that they were interested in purchasing the property; however, their offer was contingent upon a satisfactory home inspection. On November 5, 1995, appellants, their inspector, and appellee's husband Mark Craig conducted an inspection of the basement area of the residence, during which there was an examination of cistern and water supply pipes. The examination revealed that the cistern had been used to store a water supply reserve, but was not currently utilized.

The inspector advised appellants that the system he had observed was one which utilized a submersible pump in the well from which water flowed to a pressure tank in the basement. The pressure tank distributed water through the internal piping system of the house. There were also two water lines that entered into the basement area. One of the lines came from an 800–foot well that was located on the property, and the other line came from a well located on the adjacent property.[3] The well located on the adjacent property

---

[3]. The 800–foot well had been dug in 1982 by a predecessor in title of Craig.

supplied water to both appellants' residence and a guest house owned by Craig. The existence of the adjacent well was not disclosed to appellants.

On December 2, 1995, a contract of sale for the property was executed between appellants and Craig, along with a "Disclosure Statement" signed by Craig on June 9, 1994, and acknowledged by appellants on November 2, 1995, affirming that there were no problems with the water supply to the dwelling. Between November 5, 1995 and June 1996, Craig caused the water line from the guest house to appellants' residence to be cut, and the cistern reactivated to store water from the existing well on appellants' lot. On May 18, 1996, Craig's husband advised Dennis Hannibal, one of the real estate agents involved in the deal, that he had spent $4,196.79 to upgrade the water system on appellants' property and to restore the cistern and remove appellants' house from the second well on Craig's guest house property. On June 14, 1996, appellants and Craig had settlement on the property. Later that afternoon, Craig's husband, without appellants' knowledge, excavated the inside wall of appellants' house and installed a cap to stop a leaking condition on the water line that he had previously cut.

Subsequently, appellants, while attempting to fill a water bed, noticed that the water supply in their well had depleted. On July 13, 1996, appellants met with Craig to discuss a solution to the water failure problem, believing that Craig was responsible for cutting a water line to their house. Appellants agreed with Craig to conduct a flow test to the existing well and contribute money for the construction of a new well. On October 29, 1996, the well was drilled and produced only one-half gallon of water per minute. On December 13, 1996, appellants paid for the drilling of a second well on their property, but it failed to produce water. In January 1997, appellants contacted a plumber, Robert Warnick, who confirmed that the line from the guest house well to appellants' residence had been cut flush with the inside surface of the basement wall and cemented closed. Appellants continued to

do further work on the house in an effort to cure the water problem.

On February 11, 1997, appellants brought suit against Craig and other appellees in the Circuit Court for Garrett County, seeking rescission of the deed to the property and contract of sale, along with compensatory and punitive damages. During the course of the trial, the judge dismissed appellants' claim for rescission on the ground that they had effectively waived their right to rescission based on their election for a jury trial. At the close of trial, the jury returned a verdict in favor of appellants and awarded compensatory damages in the amount of $42,264.76. Appellants were also awarded punitive damages in the amount of $150,000. Subsequently, appellants filed a motion to alter or amend the judgment requesting the court to grant rescission of the contract of sale and the deed, which the circuit court denied on June 17, 1998. Craig moved for judgment notwithstanding the verdict on May 8, 1998, which was also denied by the circuit court. Following the circuit court action, this appeal ensued.

## DISCUSSION

### I

Appellants contend that the trial court erred in denying the remedy of rescission based on their election of a jury trial. Appellants argue that success on both legal and equitable claims depended upon whether Craig committed fraudulent acts, and because fraudulent conduct is common to both the rescission claims in Count I and II and the Maryland Trade Practices claim in Count III, the jury is entitled to hear the case before the court decides the claim for rescission. Appellants further assert that they timely and properly pleaded their claim for relief in equity in their complaint, and thus are entitled to be heard by the court on this claim after the jury trial was conducted. In response, appellees argue that appellants may pursue either rescission or damages, but not both and, because they elected to have their claim for damages

presented to a jury, they had waived their right to pursue a claim in equity for rescission of the deed and contract.

Appellees raise as a rejoinder to appellants' claim that the court erred in denying the right to pursue rescission, that the court erred in not finding the attempt to rescind by appellants to be untimely. In oral argument before us, counsel for appellants acknowledged that incidental expenses would have been recoverable had appellants been allowed to pursue their claim for rescission; however, in the ensuing colloquy between the court and both counsel, appellants' counsel maintained that the action for recovery for damages could be maintained simultaneously with a claim for the equitable relief of rescission, whereas appellees' counsel contended that an election must be made.

i

■ Appellees' argument that the trial court erred in its indirect finding that appellants promptly sought rescission addresses the question of whether, upon discovery of the alleged fraud, they promptly sought to rescind the contract; this issue is obviously to be distinguished from whether appellants timely made known their election of remedies once the proceedings commenced before the lower court. The law is clear that,

> [i]n this State, as well as in other jurisdictions, it is settled that when a party to a contract discovers a fraud has been perpetrated upon him [or her], he [or she] is put to a prompt election to rescind the contract or to ratify it and claim damages. Acts by a purchaser which constitute acquiescence, ratification or estoppel will preclude him [or her] from rescinding the contract.

*Wolin v. Zenith Homes, Inc.*, 219 Md. 242, 250–51, 146 A.2d 197 (1959), *cert. denied*, 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959) (citations omitted). Citing *Telma v. Gingell*, 157 Md. 411, 413, 146 A. 221 (1929), the Court of Appeals further opined in *Wolin:*

Upon the discovery ... of the fraudulent misrepresentation, the purchaser had to elect between two rights. He was put to the choice of repudiating or ratifying the conveyance, although the transaction had been fully completed by conveyance and payment. If he adopted the first alternative he repudiated the conveyance and sought its rescission and a restoration of his situation before the contract; but if he chose the second, he ratified the grant but could obtain damages to redress the injury inflicted by the false and fraudulent representation. These rights were inconsistent and mutually exclusive, and the discovery put the purchaser to a prompt election.

It appears from the court's comments that it addressed only whether appellants made a timely election to pursue rescission or damages at trial rather than whether there had been a ratification of the contract by failure to promptly repudiate it. The court said:

Now prompt decision, I don't believe the .. I don't think the [appellants] did anything inaccurate or wrong in law making a decision, but they elected a jury to decide this issue and as I've indicated before, figuratively speaking, it's like coming to a cross road. If we went left, we would go to the court of equity and seek rescission and incidental damages. If we go to the right, we would go to the court of law and we elect a jury and we ask them to penalize or pay for the damages as a result of the fraud of the [a]ppellee[s]. I think clearly in this case we've come to that cross roads and we've turned left. We've gone to seek the remedy of the jury and damages for the conveyance, and I do not think rescission of the contract is available....

■ In the case *sub judice*, the contract for the sale of the subject property was executed between the parties on December 2, 1995, accompanied by a "disclosure statement" signed by Craig on June 9, 1994, affirming that there were no problems with the water supply to the dwelling. On June 14, 1996, appellants and Craig settled on the property and, after experiencing problems with the water flow to the property,

appellants contacted a plumber, Robert Warnick, in January 1997. The instant suit was filed on February 11, 1997; therefore, approximately one month passed from the time they discovered the alleged fraud through confirmation by the plumber and the date upon which they filed suit seeking rescission.

Discussing the requirement of prompt repudiation, we said in *Cutler v. Sugarman Organization, Ltd.,* 88 Md.App. 567, 578, 596 A.2d 105 (1991):

> The right to rescind may be waived by not acting promptly on discovery of the facts from which it arises. The right to waive must be exercised within a reasonable time, which is determined, in large part, by whether the period has been long enough to result in prejudice. Rescission requires at a minimum that the party exercising a right to rescind notify the other party and demonstrate an unconditional willingness to return to the other party both the consideration that was given and any benefits received.

(Citations omitted.)

In *Sugarman,* the vendors neither tendered a return of the $1,000 deposit nor offered to pay in *quantum meruit* for the work that had been performed to develop the property or in any way disgorge themselves of the benefits of the agreement. Maryland decisions which have found that there was a waiver of the right to rescind do so on the basis of an affirmative act of ratification of the contract or some other act which evidences an intent to benefit from the transaction or which renders restoring the parties to their original position impossible or difficult. Although there is some question as to whether the trial judge directly addressed the promptness, *vel non,* of appellants' repudiation, their actions upon discovery of the fraud do not constitute waiver of their right to pursue rescission.

### ii

Appellants sought damages in the case at hand under MD.CODE (1990 Repl.Vol., 1999 Supp.), Comm. Law (C.L.)

§ 13–101, *et seq.* (Maryland Consumer Protection Act), attorney's fees, compensatory and punitive damages for fraud, negligent misrepresentation, and rescission. Prior to the merger of law and equity in 1984, a party seeking only damages could sue at law whereas one seeking equitable relief was required to go into a court of equity, where expenses incidental to the equitable relief could also be awarded. Judge McAuliffe, writing for the Court of Appeals in *Higgins v. Barnes*, 310 Md. 532, 540–41, 530 A.2d 724 (1987), explained:

> Prior to the comprehensive rules change that became effective July 1, 1984, the historical separation of law and equity had been scrupulously maintained in this State. Civil actions were required to be filed as either law or equity actions. With few exceptions jury trials were unavailable in cases filed on the equity side of the court, and equity relief was unavailable in law actions. The concept of equitable "clean-up" allowed a chancellor in equity to decide virtually all issues that legitimately found their way into the equity court, whether by claim, counterclaim, cross-claim, or third-party action, and whether the issues were historically legal or equitable in nature. This situation gave rise to concern that expansion of equity jurisdiction and the concomitant increase in the exercise of "clean-up" powers not only threatened, but in fact had eroded the right to a jury trial guaranteed by Article 23 of the Maryland Declaration of Rights.

(Citations omitted; footnote omitted.)

In considering the options where legal and equitable claims are presented to a trial court, the *Higgins* Court observed:

> Now that the merger of law and equity has been accomplished, and parties may join legal and equitable claims in a single civil action to be decided by a court no longer divided into law and equity sides, this Court must determine the impact the rules change shall have upon the availability of trial by jury. A review of the cases decided by courts of other states that have accomplished the merger of law and equity reveals a variety of approaches and philosophies, ranging from a jealous protection of the right of jury trial to

a preference for the "efficiency" of having a judge determine all issues in any case involving a legitimate equitable claim. A middle ground of cases makes the right to jury trial depend upon whether the issues in the case are predominantly legal or predominantly equitable in nature.

*Id.* at 541, 530 A.2d 724.

Thus, it was the concern that the authority vested in the equity court under the concept of equitable "clean-up" resulting in an erosion of the right to a jury trial as to legal issues that, in large measure, prompted the merger of law and equity. In *Mattingly v. Mattingly,* 92 Md.App. 248, 255, 607 A.2d 575 (1992), citing *Higgins v. Barnes,* 310 Md. at 544, 530 A.2d 724, we observed that "both the Supreme Court and the Court of Appeals have directed that when 'the existence of both legal and equitable issues within the same case requires election between the jury and the court as the determiner of common issues, the discretion of the trial court is very narrowly limited and must, wherever possible, be exercised to preserve jury trial.' " Judge Motz, writing for this Court in *Mattingly,* explained:

> Thus, as a result of the "merger of law and equity" it is often difficult to determine whether a particular case contains at least some legal claim and so entitles the litigants to a jury trial, or is wholly equitable, and so carries no entitlement to a jury trial. The Court of Appeals has directed that "we turn to the federal case law for guidance in defining the scope of the right to jury trial in Maryland." [*Higgins v. Barnes,*] 310 Md. at 543, 530 A.2d 724. The Supreme Court has set forth three factors to be considered when examining whether a particular claim gives rise to a jury trial: (1) the customary manner of trying such a cause before the merger of law and equity; (2) the kind of remedy sought by the plaintiff; and (3) the abilities and limitations of a jury in deciding the issue. *Ross v. Bernhard,* 396 U.S. 531, 538, n. 10, 90 S.Ct. 733, 738, n. 10, 24 L.Ed.2d 729 (1970).

*Mattingly,* 92 Md.App. at 256, 607 A.2d 575. *Appro pos* to appellants' claim, we said in *Mattingly:*

> Analysis of the more important second *Ross* factor also leads to this conclusion because the "relief requested" in the complaint is exclusively equitable in nature. The principal relief requested is rescission. It is well-settled in Maryland that rescission is a purely equitable remedy. *Creamer v. Helferstay,* 294 Md. 107, 114, 448 A.2d 332 (1982) ("It is beyond dispute that the authority of a court to rescind or cancel a contract is purely equitable").

*Id.* at 258, 607 A.2d 575. Finally, citing *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), we pointed out that the Supreme Court has specifically recognized that damages which are "restitutionary," e.g., "disgorgement of improper profits" or "incidental or intertwined with" certain equitable relief, e.g., an injunction, may be equitable. We concluded that where any prayer for a legal remedy is inexorably intertwined with the equitable nature of the claim made and the relief sought, the litigants are not entitled to a jury trial. The Court of Appeals in *Calabi v. Government Employees Ins. Co.,* 353 Md. 649, 655–56, 728 A.2d 206 (1999) (citing *Chase v. Winans,* 59 Md. 475, 479 (1883)), observed:

> An issue of fact from a court of equity to be tried by a jury is not a matter of right, at any stage of the proceeding.... Indeed there is no doubt that a court of equity has the power and full right to decide every question of law or fact which may arise out of the subject-matter before it, and over which it has jurisdiction, and the trial by issue forms no necessary incident to the proceedings of such court.

Ultimately, the Court of Appeals in *Calabi* held that "[i]n the instant matter the determinative factor on the issue of entitlement to a jury trial is the nature of the relief sought." *Id.* at 656, 728 A.2d 206.

Had appellants proceeded on their claim for rescission, the court could have addressed any incidental expenses attendant to the conveyance of the subject property under the

concept of equitable "clean-up" powers. The error made by the trial court in first observing that "this case has mixed questions, both in equity and in law," and then proceeding to submit initially the legal issues to the jury, was that. the instant case does not require a selection between the jury and the trial court as the "determiner of common issues" during the trial of the case, but rather a selection between two distinct and mutually exclusive forms of relief, one equitable and one legal, one inherently within the province of the court exercising its equitable jurisdiction and the other to be relegated to a determination by a jury.

Stated otherwise, although we recognize that legal issues are to be tried by a jury even if outweighed by equitable issues, unless "the use of the jury trial itself will in some way obstruct a satisfactory disposition of the equitable claim," *Mattingly,* 92 Md.App. at 256, 607 A.2d 575, the equitable and legal issues presented in the case at hand are on two separate tracks and are controlled only by the nature of the relief sought; thus, this case neither involves inexorably intertwined legal and equitable issues or legal issues merely incidental to the equitable relief sought. Rather, the alternative relief sought *is* itself legal in nature and the fact that both types of relief are based on a common factual predicate in no way effects the legal requirement that, as discussed more fully, *infra,* an initial election as to the type of relief must be made which, in turn, is dispositive of whether appellants are entitled to a jury trial.

The trend to preserve trial by jury is in no way effected by a case where the court is presented, not with mixed legal and equitable issues, but rather an equitable claim that is distinct and severable from the legal claim and involves no legal claims that are ancillary to the ultimate equitable relief sought. Simply put, the analysis employed where mixed legal and equitable issues are presented is here inapplicable because the instant case involves two incompatible forms of relief; the jury has the ability and is in no way limited in deciding all of the legal issues as to the legal claim and the equitable claim is solely within the province of the court in the exercise of its

equitable jurisdiction. Although the case at hand involves mixed claims which are incompatible rather than mixed legal and equitable issues and therefore need not be subjected to the analysis articulated in *Ross,* the first and third factors set forth in *Ross,* i.e., the customary manner in trying such a cause before the merger of law and equity and the abilities and limitations of a jury in deciding the issue[s], are consistent with allowing the jury to decide the legal claim in its entirety and assigning to the trial judge the determination of equitable issues.

██ It is only where the ultimate relief sought is equitable and there are collateral legal issues or a plaintiff is entitled to equitable relief which is compatible with and recoverable in addition to legal relief that the trial court must narrowly exercise its discretion, preserving the right to jury trial wherever possible "unless the jury trial will in some way obstruct a satisfactory disposition of the equitable claim." *Mattingly,* 92 Md.App. at 256, 607 A.2d 575. The trial court proceeded as though the case required selection between the jury and the court as the determiner of common issues when, in fact, the nature of the claims required an election of the type of relief which would be pursued.

### iii

██ Appellants filed their complaint seeking rescission of the contract of sale and deed and, in addition, they sought compensatory and punitive damages. Under Maryland law, when a party to a contract discovers that he or she has been defrauded, the party defrauded has either "a right to retain the contract and collect damages for its breach, or a right to rescind the contract and recover his or her own expenditures," not both. *See Lazorcak v. Feuerstein,* 273 Md. 69, 76, 327 A.2d 477 (1974). *See also Wolin,* 219 Md. at 250–51, 146 A.2d 197. "These rights [are] inconsistent and mutually exclusive, and the discovery put[s] the purchaser to a prompt election." *See Wolin,* 219 Md. at 251, 146 A.2d 197. "A plaintiff seeking rescission must demonstrate that he [or she] acted promptly after discovery of the ground for rescission," otherwise the

right to rescind is waived. *See Finch v. Hughes Aircraft Co.,* 57 Md.App. 190, 244, 469 A.2d 867, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985) (citations omitted); *Cutler v. Sugarman Organization, Ltd.,* 88 Md.App. 567, 578, 596 A.2d 105 (1991). Rescission is a purely equitable remedy whereby no right to a jury trial exists because a jury is without power or jurisdiction to decide such questions. *See generally Mattingly v. Mattingly,* 92 Md.App. 248, 607 A.2d 575 (1992).

In the case *sub judice,* appellants claim that they were entitled to a rescission of the subject contract of sale and deed and incidental damages. Appellants also claim that they were entitled to compensatory and punitive damages arising from Craig's actions. Appellants, however, may not successfully rescind the contract while simultaneously recovering compensatory and punitive damages. Restitution is "a party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach" and it in effect "restores the parties to their pre-contractual position." Black's Law Dictionary 7th Ed. (1999). The restoration of the parties to their original position is incompatible with the circumstance when the complaining party is, at once, relieved of all obligations under the contract while simultaneously securing the windfall of compensatory and punitive damages beyond incidental expenses.[4]

### iv

In the case before us, the trial court opined that the case was one of mixed questions of equity and law and indicated that it would decide the equitable issues after submitting the legal questions to a jury. The court said:

I believe that this case has mixed questions, both in equity and in law, but I also believe that the law questions can be resolved by a jury. Therefore, this case will be

---

**4.** Incidental expenses recoverable upon a claim for recision include, but are not limited to, costs of settlement and any other expenses attendant to a sale of real estate.

submitted to the jury on the issues of fraud, negligent misrepresentation and consumer fraud, and I believe that the jury can fairly render damages....

The [c]ourt will decide at a later date the matter of rescission, whether that requires a separate hearing or not, certainly, in this hearing.

The [c]ourt's ruling at this juncture appears consistent with the Maryland practice following the merger of law and equity in 1984 as stated in *Ashem [Hashem] v. Taheri*, 82 Md.App. 269 [571 A.2d 837] (1990): "Where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims[.]"

In its ruling on the motion to alter or amend the judgment, the court further opined:

As we've went [sic] through the case, it was apparent to the court that you had chose [sic] the damage route. You were not entitled to rescission. *Perhaps,* [sic] *the court should have said before we impaneled the jury, this is the decision you must make. Do you want a court trial or a jury trial and allowed you to make that* knowing the knowledge that you have of the law and your reputation, the court realizes you know all those things and you absolutely had a right to trial by jury on count three, which played very small in this case except the fact that by virtue of count three, your legal bill was awarded. Now, that's how I see that. I don't think you're entitled to both rescission and damages. So, I'm going to deny your motion.

(Emphasis added.)

 Although the court advised counsel that it was "apparent" to the court that appellants had chosen to seek damages, it immediately acknowledged thereafter that it "should have said before we empaneled the jury, this is the decision you must make." The court then suggests that, based on counsel's knowledge of the law and reputation, that

counsel should have known that proceeding with a jury trial would thereby preclude him from seeking rescission. The court, however, had previously told appellants' counsel, "The [c]ourt will decide at a later date the matter of rescission, whether that requires a separate hearing or not, certainly, in this hearing."

We believe that appellants' counsel justifiably relied upon the court's assurances that it would consider rescission after the legal issues had been presented to the jury. The very fact that counsel had been given assurances that the matter of rescission would be addressed justified a belief that no election was required, notwithstanding whether the court believed that he should have known that election of a jury trial would in effect waive the right to pursue rescission.

In sum, although whether appellants promptly repudiated the contract was not squarely before the court, we are not persuaded by appellees' assertion that appellants did not seek rescission in a timely fashion. We hold that, under the facts of this case, appellants must elect the form of relief, i.e., damages or rescission, which will dictate whether appellants are entitled to a jury trial or a court trial. Because counsel was led to believe by the court that no election was required, we shall remand the case to the lower court for counsel to make the proper election and for the case to be retried, pursuant to that election.[5]

---

**5.** Both counsel were mindful of the court's assurance that it would consider appellant's claim for rescission after the jury decided the legal claims. Consequently, it is not possible to determine what affect, if any, the belief that the rescission claim would be adjudicated at a later point in the proceedings had in the formulation of trial strategy by both counsel in litigating the legal claims. In view of this erroneous premise, a remand for the purpose of reinstating the verdict already returned by the jury, should appellants elect to pursue their legal remedy, would be fundamentally unfair to both parties. Appellants were denied their right to pursue their claim for rescission and were awarded only one-half of the damages claimed and appellees' ability to defend against the legal claim may have been diffused by the prospect of countering yet another claim, this one for equitable relief. Consequently, in our view, both parties must be afforded an opportunity to present their respective

## II

Although we remand for the trial court to permit appellants to elect which remedy they wish to pursue, for the guidance of the court, we shall address the question presented by Craig in her cross-appeal, i.e., whether the trial court erred by allowing the jury verdict awarding appellants punitive damages in the amount of $150,000 to stand. Craig contends that there was no evidence presented to establish actual malice in order to sustain the award for punitive damages. Appellants counter that the circuit court correctly dismissed Craig's motion for judgment notwithstanding the verdict for punitive damages because they presented clear and convincing evidence of deliberate, knowing misrepresentations and failure to disclose on the part of Craig to justify a jury finding that appellants acted with actual malice.

We hold that the trial court properly dismissed Craig's motion for judgment notwithstanding the verdict because appellants are entitled to be awarded punitive damages resulting from Craig's actions. A "[p]laintiff seeking to recover punitive damages must allege in detail in the complaint the facts that indicate the entertainment by defendant of evil motive or intent." *See Scott v. Jenkins*, 345 Md. 21, 690 A.2d 1000 (1997). The Court of Appeals has held that "punitive damages may only be awarded in such cases where 'the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will or fraud ... ' ". *See Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 229, 652 A.2d 1117 (1995) (citations omitted). In cases of fraud that arise out of a contractual relationship, the plaintiff would have to establish actual malice to recover punitive damages. *Miller Bldg. Supply, Inc. v. Rosen*, 61 Md.App. 187, 196, 485 A.2d 1023 (1985), *aff'd*, 305 Md. 341, 503 A.2d 1344 (1986). Finally, we have stated that "actual or express malice requires an intentional or willful act (or omission) ... and 'has been

positions anew *sans* the cloud of a further proceeding beyond the adjudication of the legal claims.

characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *See id.* at 195, 485 A.2d 1023 (citations omitted).

In the instant case, the jury found that appellants had been induced by fraud to enter into a contract for the sale of Craig's property. At trial, the judge instructed the jury that it could award punitive as well as compensatory damages. In response to the question whether Craig willfully made a misrepresentation of material fact to induce appellants to purchase the property, the jury indicated "yes." In answer to the question whether appellants reasonably relied upon the misrepresentation in deciding to purchase the property, the jury again indicated "yes." With respect to the final part of the verdict sheets under the tort counts, the jury awarded punitive damages in the amount of $150,000, which was one-half the amount appellants prayed for in their complaint.

The jury believed that the representations made by Craig were undertaken with actual knowledge that the representations were false and with the intention to deceive appellants. The Court of Appeals, in *Ellerin,* held that a person's actual knowledge that the statement is false, coupled with his or her intent to deceive the plaintiffs by means of that statement, constitutes the actual malice required to support an award for punitive damages. *Ellerin,* 337 Md. at 240, 652 A.2d 1117. Moreover, the record reflects that the jury could reasonably infer Craig's intention to defraud appellants by her representation in the Disclosure Statement that there were no problems with the water supply, and by subsequently making substantial changes in the water system by cutting off a water line which supplied water to appellants' residence immediately after appellants' inspector examined the system. Therefore, we hold that the circuit court was not in error in finding facts from the record sufficient to support an award of punitive damages.

Craig also challenges the punitive damages award on the basis that the amount of the award was excessive. She relies upon *Bowden v. Caldor, Inc.,* 350 Md. 4, 710 A.2d 267 (1998), as support for her proposition that the punitive damage award was excessive. Craig claims that the award does not fit the criteria established under *Bowden.* In *Bowden,* the Court of Appeals set forth factors that focus on perceived constitutional requirements to guide the court when reviewing an award for excessiveness. *Id.* at 26, 710 A.2d 267. There are nine factors but not all are intended to be exclusive or all encompassing and "not all of the ... factors are pertinent in every case involving court review of punitive damages awards." *See id.* at 41, 710 A.2d 267. The most salient factor recognized under Maryland law when assessing a punitive damages award "is that the amount of punitive damages 'must not be disproportionate to the gravity of the defendant's wrong.'" *See id.* at 27, 710 A.2d 267. Another important factor involves defendant's financial status in that the "amount of punitive damages should not be disproportionate to ... the defendant's ability to pay." *See id.* at 28, 710 A.2d 267 (citations omitted). A third criteria of importance is deterrence, that is to deter the defendant from engaging in such conduct in the future. *Id.* at 29, 710 A.2d 267. Finally, there should be a proportional relationship between the compensatory and punitive damage awards. *Id.* at 38, 710 A.2d 267.

In the case at hand, the trial judge undertook the appropriate review of the jury's award. It is clear from the court's comments at the hearing that the court's decision not to disturb the jury's verdict was based on the evidence presented at trial and was not excessive under the criteria set forth in *Bowden.* Craig's conduct toward appellants was reprehensible and fully warranted punitive damages. Her conduct in willfully misrepresenting the condition of the water system in the Disclosure Statement, coupled with her actions and those of her husband in interfering and diverting the water flow subsequent to the inspection and sale of the property, constitute egregious conduct. As a result of Craig's conduct, appellants were forced to employ extreme water conservation prac-

tices due to an insufficient water supply and they attempted to ameliorate the problem by having two new wells drilled on the property which proved to be unproductive. Moreover, the lack of water supply to appellants' property clearly reduced its market value. Therefore, Craig's actions were not disproportionate to the gravity of harm that appellants suffered.

Craig next argues that the punitive damage award was excessive because $150,000 is disproportionate to her ability to pay because of her employment as a school teacher. She contends that, although she owns a home and a partnership interest in property in a resort area in Garrett County, there is no evidence of the value of these interests or her access to them. We conclude, however, that the award of $150,000 would not have a devastating impact upon Craig's financial position in light of her assets and her involvement with the sale of other building lots in the Pergin Farm subdivision.

Additionally, Craig asserts that there is no basis for awarding punitive damages to deter her from engaging in the type of conduct forming the basis of the award. She argues that she did attempt to mitigate the damages caused by her conduct, but appellants refused to accept. Craig claims that she offered to have the water line reconnected, to provide an easement across the property to allow for a new well to be drilled, and that she made available to appellants a community water system that was being developed for another property. Although Craig asserts in her brief that she offered to mitigate her conduct, the only evidence in the record indicates that, after her conduct was exposed, she offered to furnish a source of water by reconnecting appellants to an adjacent well connected to a community water system. Craig's offer, after the fact, is insufficient to warrant a reversal of a jury award for punitive damages. Craig is engaged in the sale of real estate and the punitive damage award is appropriate to deter her from engaging in the same type of conduct with other prospective purchasers. In light of the above factors, the punitive damage award was not excessive. Consequently, should appellants seek compensatory and punitive damages on remand, appellants' actual knowledge, coupled with the intent

to deceive, is a sufficient factual predicate for submission of punitive damages to the jury.

JUDGMENT OF THE CIRCUIT COURT FOR GARRETT COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.