*Raychel Harvey-Jones v. Susan Coronel,* No. 1232, September Term, 2017. Opinion by Beachley, J.

**COMENSATORY DAMAGES—DAMAGES PRESUMED WHEN STATEMENT IS DEFAMATORY *PER SE* AND MADE WITH ACTUAL MALICE**

**PUNITIVE DAMAGES—MARYLAND COMMON LAW—GRAVITY OF WRONG—ABILITY TO PAY—DETERRENCE—EXTANT LEGISLATIVE SANCTIONS—COMPARISON TO OTHER AWARDS—RELATIONSHIP TO COMPENSATORY DAMAGES**

**PUNITIVE DAMAGES—FEDERAL CONSTITUTIONAL LAW—DUE PROCESS—DEGREE OF REPREHENSIBILITY—RATIO OF PUNITIVE DAMAGES TO COMPENSATORY DAMAGES—COMPARABLE SANCTIONS FOR CONDUCT**

Michael Scott began receiving anonymous harassing text messages and e-mails while dating appellant Raychel Harvey-Jones. Ms. Harvey-Jones told Mr. Scott that the culprit was Mr. Scott's ex-girlfriend, appellee Susan Coronel. To show that Ms. Coronel was the harasser, Ms. Harvey-Jones sent Mr. Scott a text message which purported to show that Ms. Coronel had been previously charged with harassment as a course of conduct, electronic mail harassment, and telephone misuse.

It was later revealed that Ms. Coronel had never been charged with any of the above-stated offenses. Indeed, it was Ms. Harvey-Jones who had been charged with those offenses. Apparently, Ms. Harvey-Jones had edited her own statement of charges to frame Ms. Coronel.

When she learned about the fake statement of charges, Ms. Coronel sued Ms. Harvey-Jones for defamation. Ms. Coronel received a default judgment, and following a hearing on damages, the circuit court awarded her $10,000 in compensatory damages and $200,000 in punitive damages. Ms. Harvey-Jones appealed.

*Held*: Judgment affirmed. Compensatory damages are presumed when statement is defamatory *per se* and made with actual malice. Because Ms. Harvey-Jones conceded that her defamatory statements were made with actual malice, the award of $10,000 in presumed damages was not error.

Under lens of Maryland common law, punitive damages award was not error. The $200,000 award was not disproportionate to the gravity of Ms. Harvey-Jones's wrong. The court heard reliable evidence that Ms. Harvey-Jones had the ability to pay the award. The record showed that Ms. Harvey-Jones inferentially continued to post defamatory statements on the internet following Ms. Harvey-Jones being criminally charged for

defaming Ms. Coronel. The $200,000 award was comparable to other punitive damages awards in Maryland.

Under federal constitutional law, the punitive damages award was not error. Given the high degree of reprehensibility of Ms. Harvey-Jones's conduct, the 20:1 ratio of punitive damages to compensatory damages did not offend due process.

Circuit Court for Baltimore County
Case No. 03-C-16-008542

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1232

September Term, 2017

_____

RAYCHEL HARVEY-JONES

v.

SUSAN CORONEL

_____

Graeff,
Kehoe,
Beachley,

JJ.

_____

Opinion by Beachley, J.

_____

Filed: November 1, 2018

*Judge Kevin F. Arthur and Judge Matthew J.
Fader did not participate in the Court's decision
to designate this opinion for publication pursuant
to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document * authentic.



Suzanne C. Johnson, Acting Clerk

In August 2016, Susan Coronel, appellee, filed a claim in the Circuit Court for Baltimore County against appellant Raychel Harvey-Jones, alleging defamation *per se*. Because Ms. Harvey-Jones failed to timely answer, the court, upon Ms. Coronel's request, issued an Order of Default. Following Ms. Harvey-Jones's unsuccessful motions to stay and vacate the Order of Default, the court scheduled a hearing to determine damages. At the conclusion of the hearing, the court awarded Ms. Coronel $10,000 in compensatory damages and $200,000 in punitive damages. Ms. Harvey-Jones timely appealed and presents three questions for our review:

1. Did the Circuit Court err in awarding $10,000 in compensatory damages?

2. Did the Circuit Court err in awarding $200,000 in punitive damages where it was grossly excessive and violated due process?

3. Did the Circuit Court err in awarding an excessive monetary judgment where it was based on unverified admissions by default?

We discern no error, and affirm.

## FACTS AND PROCEEDINGS

According to the testimony at the hearing on damages, Ms. Coronel dated a man named Michael Scott "off and on from 2012 to 2015." The conclusion of that relationship coincided with Ms. Coronel seeking $110,000 from Mr. Scott in unrelated litigation in the Circuit Court for Baltimore City. In late 2015, Mr. Scott met and subsequently began dating Ms. Harvey-Jones.

At some point thereafter, someone began to harass Mr. Scott by anonymously sending him e-mails and text messages. Believing the culprit was Ms. Coronel, Mr. Scott hired Steve Brown, a private investigator. In late February 2016, Ms. Harvey-Jones sent

Mr. Scott a text message stating that Ms. Coronel was the person who had been harassing him, and that Ms. Coronel had also sent over 300 e-mails to the local NBC news affiliate, resulting in her owing NBC $17,000 in damages. Ms. Harvey-Jones's text message also contained a statement of charges which purported to show that Ms. Coronel had been charged with harassment as a course of conduct, electronic mail harassment, and telephone misuse. Believing the text message to be true, Mr. Scott forwarded it to his private investigator. Mr. Brown then met with Baltimore County Police Detective Larry Rogers, the officer who purportedly authored the charging document, to verify the contents of the text message.

When Detective Rogers saw the charging document, he suspected it to be counterfeit. He noted that the charging language, dates, and some of the applicable criminal codes were missing, and he also knew that he had never charged Ms. Coronel with harassment. Detective Rogers reviewed the tracking number from the charging document and determined that the tracking number and harassment charges matched a statement of charges he had filed in 2015 against Ms. Harvey-Jones. To be certain, Detective Rogers then searched Ms. Coronel's criminal record, and verified that she had never been charged with harassment.

Near the end of March 2016, Mr. Brown informed Mr. Scott that Ms. Harvey-Jones's text was inaccurate, that the charging document was fake, and that Ms. Coronel had neither harassed NBC with 300 e-mails, nor did she ever owe NBC $17,000 in damages.

2

Detective Rogers arrested Ms. Harvey-Jones in July 2016, and charged her with forgery of a public document. A local news website, *Eye on Annapolis*, posted a story about Ms. Harvey-Jones's arrest. In the comments section of the article, a person named "Jane Shims" claimed that "someone [was] lying or misrepresenting" what had transpired and that Ms. Coronel was "a bitter ex." Detective Rogers traced the IP address for Jane Shims, as well as other "people" who had commented on the article. He determined that the IP addresses for Jane Shims and several other commenters all belonged to a computer in Ms. Harvey-Jones's home.

In August 2016, Ms. Coronel filed a complaint against Ms. Harvey-Jones, alleging defamation *per se*. The complaint alleged that Ms. Harvey-Jones sent Mr. Scott a text message which contained a counterfeit charging document, as well as a false story that Ms. Coronel had sent NBC 300 e-mails and consequently owed $17,000 in damages. When Ms. Harvey-Jones failed to timely respond to the complaint, Ms. Coronel requested an Order of Default, which the court entered on October 7, 2016. Ms. Harvey-Jones subsequently filed an untimely motion to vacate, as well as a motion for reconsideration. The court denied both motions. Ms. Coronel then requested a hearing to determine damages.

At the hearing on damages, the circuit court received testimony from Ms. Coronel and Detective Rogers, as well as excerpts from Mr. Scott's deposition. At the conclusion of the hearing, the court awarded Ms. Coronel $10,000 in compensatory damages and $200,000 in punitive damages. As stated above, Ms. Harvey-Jones timely appealed.

## DISCUSSION

I.    COMPENSATORY DAMAGES

"When an action has been tried without a jury, we 'review the trial court's decision on both the law and the evidence, upholding factual findings unless clearly erroneous, but subjecting its legal conclusions to *de novo* review.'"  *Thomas v. Capital Med. Mgmt. Assocs., LLC*, 189 Md. App. 439, 453 (2009) (quoting *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 183 Md. App. 710, 722 (2009)).

Ms. Harvey-Jones contends that the circuit court erred by awarding $10,000 in compensatory damages because the "evidence was speculative."  Essentially, Ms. Harvey-Jones argues that the circuit court was required to base its award of compensatory damages on evidence of actual harm.  However, her position is contrary to Maryland law, which allows for the presumption of damages when a plaintiff establishes that a statement was defamatory *per se* and made with actual malice:

> [W]hen a plaintiff establishes that a statement was defamatory *per se* and, by clear and convincing evidence, demonstrates that it was made with actual malice, a "presumption of harm to reputation . . . arises from the publication of words actionable *per se*.  A trier of fact is not constitutionally barred from awarding damages based on that presumption in [an actual] malice case."  *Hanlon v. Davis*, 76 Md. App. 339, 356, 545 A.2d 72 (1988) (citation omitted).  In other words, if the statement is defamatory *per se*, damages are presumed when a plaintiff can demonstrate actual malice, by clear and convincing evidence, even in the absence of proof of harm.

*Samuels v. Tschechtelin*, 135 Md. App. 483, 549-50 (2000).

We initially note that Ms. Harvey-Jones apparently concedes that her defamatory statements were made with actual malice.  Instead, Ms. Harvey-Jones asserts that there was insufficient evidence to "presume the damage to justify the compensation awarded here."

4

Although Ms. Coronel requested $50,000 in compensatory damages, the circuit court determined that $10,000 was the appropriate award. In our view, the court did not err. In making this determination, the court stated that:

> [T]here isn't any showing of lost income so I find it difficult to presume $50,000 worth of damage. So the Court will award $10,000 in compensatory damages because I think that there probably is good reason to think, more likely than not, that [Ms. Coronel] diverted time from her business to meet with the detective and her lawyer, to prepare for this lawsuit and I have little doubt that she was upset by this turn of events, with having this information on the internet where it really can't be erased. So I think $10,000 is a reasonable and fair amount to award for compensatory damages.

The record reflects that Ms. Harvey-Jones's actions impacted Ms. Coronel's reputation on social media, Yelp, and among her acquaintances. Ms. Coronel testified that she devoted time to "set the story straight," which included meetings with her attorney and with Detective Rogers. In light of Ms. Harvey-Jones's defamatory statements, made with actual malice, we see no error in the trial court's compensatory damages award.

II.     PUNITIVE DAMAGES

Ms. Harvey-Jones next argues that the circuit court's award of punitive damages was "grossly excessive and violated due process." As an initial matter, we note that the basis for Ms. Harvey-Jones's argument is unclear. Although Ms. Harvey-Jones primarily cites to United States Supreme Court cases applying federal constitutional law, she also cites to *Bowden v. Caldor*, 350 Md. 4 (1998), a case in which the Court of Appeals discussed excessive punitive damages in the context of Maryland common law. We will therefore address Ms. Harvey-Jones's argument under both Maryland common law and federal constitutional law.

5

**A. Maryland Common Law**

The Court of Appeals has identified nine legal principles that inform a court's determination of whether punitive damages are excessive. *Khalifa v. Shannon*, 404 Md. 107, 142 (2008) (citing *Bowden*, 350 Md. at 27-41). In setting forth this list of considerations, the Court clarified that the list was "not intended to be exclusive or all-encompassing[,]" and that "not all of the above-summarized principles or factors are pertinent in every case involving court review of punitive damages." *Bowden*, 350 Md. at 41. Here, six of the nine *Bowden* factors are relevant: 1) gravity of the wrong, 2) ability to pay, 3) deterrence value, 4) legislative sanctions, 5) comparison to other awards, and 6) relationship to compensatory damages.[1] *See id.* at 27-41. Because the factors limiting an award of punitive damages are principles of law, we review them *de novo*. *Khalifa*, 404 Md. at 142. We shall address each of the six relevant *Bowden* factors in turn.

*1. Gravity of the Wrong*

"The most important legal rule in this area, applicable to every punitive damages award, is that the amount of punitive damages 'must not be disproportionate to the gravity of the defendant's wrong.'" *Bowden*, 350 Md. at 27 (quoting *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 242 (1995)). "Accordingly, in determining whether the amount of the award is disproportionate to the gravity of the defendant's conduct, it is the degree of the

---

[1] The other three *Bowden* factors are: 1) "other final and satisfied punitive damages awards against the same defendant for the same conduct"; 2) "[w]hen the total amount of punitive damages awarded against the defendant is based on separate torts . . . whether the separate torts all grew out of a single occurrence"; and 3) "[t]he plaintiff's reasonable costs and expenses." *Bowden*, 350 Md. at 34-36 (1998).

heinousness which is important." *Id*. (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

Here, Ms. Harvey-Jones, while on probation for criminal cyber harassment, maliciously engaged in conduct designed to harm and defame Ms. Coronel. Ms. Harvey-Jones made defamatory statements about Ms. Coronel and falsified a Baltimore County criminal charging document in an attempt to establish Ms. Coronel's criminal character. Even after being charged with criminal forgery, Ms. Harvey-Jones inferentially used fictitious names to post online comments claiming that the falsified charging document was genuine. We note that, in awarding punitive damages, the circuit court expressly considered Ms. Harvey-Jones's "level of malice."

In *Merritt v. Craig*, 130 Md. App. 350 (2000), we considered whether punitive damages of $150,000 were excessive when compared with the actions of Craig, a home seller who willfully misrepresented the condition of the home's water system, and then interfered with and diverted the water system following inspection and sale of the property. We held that "Craig's conduct toward appellants was reprehensible and fully warranted punitive damages[,]" and further held that $150,000 was not disproportionate to the harm caused by Craig's actions. *Id.* at 371-72.

Moreover, although it is difficult to quantify the extent of the harm caused by Ms. Harvey-Jones's conduct, the potential criminal penalties for Ms. Harvey-Jones's actions substantiate the seriousness of her conduct. Under Md. Code (2002, 2012 Repl. Vol.) § 8-605(b) of the Criminal Law Article ("CR"), the counterfeiting of a public document is classified as a felony and is punishable by imprisonment for a minimum of two years and

a maximum of ten years.  Considering the nature of Ms. Harvey-Jones's conduct, which in our view was more serious than the conduct at issue in *Merritt*, a punitive damages award of $200,000 is not "disproportionate to the gravity of [appellant's] wrong."  *Bowden*, 350 Md. at 27.

### 2. *Ability to Pay*

"A second very important principle, long recognized under Maryland law, is that the amount of punitive damages 'should not be disproportionate to . . . the defendant's ability to pay.'" *Bowden*, 350 Md. at 28 (quoting *Ellerin*, 337 Md. at 242).  In Ms. Harvey-Jones's view, the court's punitive damages award was unjust because no "reliable evidence" on her ability to pay was presented at the "one-sided" hearing on damages.  We disagree.

We initially note that the Court of Appeals has stated that "[s]ound reasoning supports our view that *a plaintiff has no obligation to establish a defendant's ability to pay punitive damages*." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 275 (2004) (emphasis added).  The Court reasoned:

> Compelling a plaintiff seeking punitive damages to present evidence of a defendant's financial condition could, on the one hand, require a plaintiff with limited financial resources to wage a complicated discovery campaign against a monetarily sated defendant. On the other hand, it would license the plaintiff to conduct extensive pre-trial discovery of the defendant's finances to support a measure of damages that may never be awarded. Not only could the latter result in a severe invasion of the defendant's privacy, but it could also unnecessarily cost the defendant a great deal of time and money to compile all of its financial information.

*Id.* at 275-76.  Our appellate courts have upheld punitive damages awards in several cases similar to the instant case, where the defendants apparently elected not to present

8

documentation of their assets or net worth, but where the record suggested that they had the ability to pay. *See Merritt*, 130 Md. App. at 372 (holding that $150,000 was not disproportionate to defendant school teacher's ability to pay where defendant owned a home and a partnership interest in a resort area in Garrett County, even though there was no evidence of the value of these interests); *Darcars*, 379 Md. at 278 (holding that plaintiff had no obligation to establish that defendant car dealership had the ability to pay a $25,000 award of punitive damages); *Khalifa*, 404 Md. at 144-45 (holding that punitive damages of $2,000,000 were not disproportionate to defendants' ability to pay where plaintiff testified that defendants owned multiple properties in various parts of the world, and holding that plaintiff was not required to prove that the properties were titled in defendants' names or that defendants had the ability to pay).

Here, Ms. Harvey-Jones failed to take advantage of multiple opportunities to present evidence regarding her assets or her ability to pay punitive damages. Not only did Ms. Harvey-Jones fail to respond to Ms. Coronel's request for admissions, she also failed to appear at her deposition or at the hearing on damages before the circuit court. Although Ms. Harvey-Jones declined to provide any information about her finances, her deemed admissions resulting from her failure to object to Ms. Coronel's requests for admissions pursuant to Rule 2-424 permitted the court to consider that her net worth exceeded $1,000,000. In addition, there was evidence that, following the denial of Ms. Harvey-Jones's motion to vacate the order of default, she had transferred an unencumbered property worth over $200,000 to her sibling for no consideration.

9

In light of the record and relevant case law, we reject Ms. Harvey-Jones's argument that the punitive damages award must be vacated because there was no "reliable evidence" that she had the ability to pay.[2]

*3.  Deterrence Value*

"Since one of the purposes of punitive damages is to deter the defendant from engaging in the type of conduct forming the basis for the award, the deterrence value of the amount awarded by the jury, under all of the circumstances of the case, is relevant." *Bowden*, 350 Md. at 29.  The *Bowden* Court further stated that,

> A defendant's taking of remedial or corrective action, promptly after the misconduct giving rise to the award of punitive damages, obviously should be a mitigating factor.  On the other hand, repeated or frequent misconduct of the same nature, misconduct of long duration, attempts to conceal or cover-up the misconduct, failure to take corrective action, and similar circumstances, support the deterrence value of a significant award.

*Id.* (internal citations omitted).

Here, Ms. Harvey-Jones failed to take any corrective action following her misconduct, and inferentially continued to post false comments under fake names in response to an online news article even after she was criminally charged with forgery of a public document.  In short, the deterrence value of a punitive damages award is a relevant consideration under the circumstances of this case.

---

[2] We recognize, however, that "merely because a defendant may be able to pay a very large award of punitive damages, without jeopardizing the defendant's financial position, does not justify an award which is disproportionate to the heinousness of the defendant's conduct."  *Bowden*, 350 Md. at 28.

*4. Legislative Sanctions*

"[I]n determining whether an award of punitive damages is proportionate to the defendant's misconduct, a court may consider, *inter alia*, the legislative policy reflected in statutes setting criminal fines." *Bowden*, 350 Md. at 30 (quoting *Ellerin*, 337 Md. at 242-43 n.13). Comparison to criminal fines is not pertinent in all cases.

> Under some circumstances, the maximum criminal fine for comparable conduct should not be given very much weight in reviewing a punitive damages award for excessiveness. There are many serious criminal offenses chiefly aimed at individuals, rather than corporate entities, where the principal sanction is imprisonment, and the monetary penalty is relatively small. In this situation, the criminal fine for similar misconduct is not very pertinent in reviewing an award of punitive damages.

*Id.* at 31. As discussed above, a person convicted of counterfeiting a public document under CR § 8-605 is subject only to a term of imprisonment; no fine or other monetary penalty is prescribed. Because the legislature elected not to impose a monetary fine for this criminal offense, the lack of a monetary penalty is of minimal relevance in our analysis.

*5. Comparison to Other Awards*

"Another appropriate consideration in judicially reviewing an award of punitive damages is to compare the award with other final punitive damages awards in the jurisdiction, and particularly with awards in somewhat comparable cases." *Bowden*, 350 Md. at 31. The *Bowden* Court summarized the cases in which it had upheld awards of punitive damages:

> Apparently the largest award of punitive damages which has ever been upheld by this Court was $700,000, and in that case the size of the award was not an issue before this Court. *Franklin Square Hosp. v. Laubach,* 318 Md. 615, 617–618, 569 A.2d 693, 694–695 (1990). The next ten highest awards of punitive damages upheld by us seem to be as follows: $107,875 (*St. Luke*

11

*Church v. Smith,* 318 Md. 337, 568 A.2d 35 (1990)); $100,000 each for two plaintiffs, based on two separate acts of fraud (*Nails v. S. & R.,* 334 Md. 398, 639 A.2d 660 (1994)); $82,000 (*Luppino v. Gray,* 336 Md. 194, 647 A.2d 429 (1994)); $50,000 (*Macklin v. Logan,* 334 Md. 287, 639 A.2d 112 (1994)); $40,000 (*Embrey v. Holly, supra,* 293 Md. 128, 442 A.2d 966); $36,000 (*Drug Fair of Md., Inc. v. Smith,* 263 Md. 341, 283 A.2d 392 (1971)); $35,000 (*General Motors Corp. v. Piskor,* 281 Md. 627, 381 A.2d 16 (1977)); $30,000 (*Great Atl. & Pac. Tea Co. v. Paul,* 256 Md. 643, 261 A.2d 731 (1970)); $25,000 (*Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 340 A.2d 705 (1975)); $25,000 (*American Stores Co. v. Byrd,* 229 Md. 5, 181 A.2d 333 (1962)). Moreover, in most of these cases no argument was made that the punitive awards were excessive.

*Id.* at 32-33. Notably, the Court recognized that the awards in the older cases would be larger in terms of present dollars if adjusted for inflation. *Id.*

Although the court's award of $200,000 in punitive damages here appears to be significantly larger than the awards summarized by the Court in *Bowden*, we note that those awards become comparable once they are adjusted for inflation. For example, the punitive damages award of $105,875 against a single party in *St. Luke Church*, 318 Md. at 341 (defamation case) equates to $209,787.91 today; the punitive damages award of $35,000 in *Embrey*, 293 Md. at 132 (defamation case) equates to $93,495.93 today; the punitive damages award of $30,000 in *Great Atl.*, 256 Md. at 645 (assault and battery, slander, and false imprisonment case) equates to $199,293.95 today; and the $25,000 punitive damages award in *Am. Stores*, 229 Md. at 7 (slander case) would be $208,972.68 in today's dollars.[3] Put simply, the punitive damages award of $200,000 in 2018 for Ms. Harvey-Jones's

---

[3] All inflation-adjusted calculations were performed with the Consumer Price Index ("CPI") Inflation Calculator from the date (month and year) of opinion publication to September 2018, the most recent date for available data. U.S. Dep't of Labor Bureau of Labor Statistics, *CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm (last visited Oct. 18, 2018).

defamatory conduct is not significantly larger than awards that have been upheld in earlier defamation cases.

*6. Relationship to Compensatory Damages*

"Whether a punitive damages award bears a reasonable relationship to the compensatory damages awarded in the case . . . should be a consideration when a court reviews an award of punitive damages for excessiveness." *Bowden*, 350 Md. at 39. This factor is not dispositive, however, as the *Bowden* Court noted that:

> [T]here are situations in which little or no consideration should be given to the relationship which punitive damages awards bear to compensatory damages awards. For example, where the defendant engages in extremely heinous conduct having great potential for harm, but because of fortuitous circumstances the plaintiff does not suffer a great deal of compensatory harm, the amount of the compensatory damages award furnishes a poor guide to the amount of an appropriate punitive damages award.

*Id.* at 40; *see also Shabazz v. Bob Evans Farms, Inc.*, 163 Md. App. 602, 639-41 (2005) (noting that nominal compensatory damages may support an award for punitive damages, and summarizing cases in which punitive damages were upheld even though no actual damages were proven); *cf. Zachair, Ltd. v. Driggs*, 135 Md. App. 403, 424-25 (2000) (stating that case involving multi-million dollar compensatory award for purely economic loss was not one in which the relationship between compensatory and punitive damages was an important factor, and holding that punitive damages approximately equal to compensatory award was excessive).

We are convinced that this case presents one of those situations contemplated by the *Bowden* Court where the ratio between compensatory damages and punitive damages is

13

outweighed by other factors such as the gravity of the wrong and the need for deterrence.[4]

Here, Ms. Harvey-Jones orchestrated, and perpetuated, a defamatory attack on Ms. Coronel's character. Although Ms. Coronel did not sustain any physical injury, Ms. Harvey-Jones's statements falsely suggested that Ms. Coronel was involved in criminal conduct. Our review of punitive damages awards in similar cases supports our conclusion that the circuit court's award of $200,000 in punitive damages was not excessive under Maryland law. *See, e.g.*, *Am. Stores*, 229 Md. 5 (upholding punitive damages of $25,000 in slander case where plaintiff was accused of stealing $117 from a grocery store and where there was no proof plaintiff had suffered any special damages).

Accordingly, the punitive damages award in this case comports with Maryland common law.

**B. Federal Constitutional Law**

Although technically a distinct analysis, the determination of whether a punitive damages award violates due process under federal constitutional law is largely subsumed by the *Bowden* factors. In *Gore*, the United States Supreme Court set forth three guideposts to aid courts in determining whether a punitive damages award violates the Due Process Clause of the Fourteenth Amendment: 1) degree of reprehensibility, 2) ratio [between punitive damages and actual harm], and 3) sanctions for comparable misconduct. 517 U.S.

---

[4] We are also cognizant that the purpose of punitive damages is not to recompense the victim, but rather "to punish the wrongdoer and to deter such conduct by the wrongdoer or others in the future." *Shabazz*, 163 Md. App. at 638-39 (quoting *Caldor, Inc. v. Bowden*, 330 Md. 632, 661 (1993)).

at 574-85. Notably, these guideposts are substantively identical to some of the factors identified by the Court of Appeals in *Bowden*, 350 Md. at 27-41. Like the Maryland common law analysis, the federal constitutional analysis provides for *de novo* review of an allegedly excessive punitive damages award. *Cooper Indus., Inc. v. Leatherman Tool Grp.*, 532 U.S. 424, 431 (2001). Although we have substantially discussed these factors above, we will briefly address each of the guideposts articulated by the Supreme Court in *Gore*.

*1. Degree of Reprehensibility*

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. "This principle reflects the accepted view that some wrongs are more blameworthy than others. Thus, we have said that 'nonviolent crimes are less serious than crimes marked by violence or the threat of violence.'" *Id.* at 575-76 (quoting *Solem v. Helm*, 463 U.S. 277, 292-93 (1983)). The Supreme Court further stated that, "Similarly, 'trickery and deceit' are more reprehensible than negligence." *Id.* at 576 (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 (1993)) (internal citation omitted). Because the considerations inherent in this factor are comparable to those associated with the *Bowden* factor for "gravity of the wrong," our earlier analysis of that factor is also applicable here. *See* discussion *supra* Part II.A.1.

*2. Ratio*

"The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *Gore*, 517 U.S. at 580. This guidepost is linked to the *Bowden* factor for "relationship to

15

compensatory damages." *See* discussion *supra* Part II.A.6.  Although the Supreme Court has declined to impose "a bright-line ratio which a punitive damages award cannot exceed[,]" the Supreme Court noted that

> Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. In *Haslip,* in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. 499 U.S., at 23–24, 111 S. Ct. 1032. We cited that 4–to–1 ratio again in *Gore*. 517 U.S., at 581, 116 S. Ct. 1589. . . . While these ratios are not binding, they are instructive. . . .
> Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages." *Ibid.*

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).  The Supreme Court further noted that "a higher ratio *might* be necessary where 'the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.'"  *Id.* (quoting *Gore*, 517 U.S. at 582).  In short, although the Supreme Court observed that a single-digit ratio between compensatory and punitive damages generally satisfies due process, higher ratios may pass constitutional muster when the compensatory or economic damages are low, when the injury is hard to detect, or when the value of noneconomic harm is difficult to determine.  *Id.*

We hold that the 20 to 1 ratio here represents the type of case envisioned by the Supreme Court that would satisfy due process.  In defamation cases, actual harm is often difficult to prove, resulting in lower compensatory damages awards.  Additionally, it can be challenging to detect the injury and determine the value of noneconomic harm.  In these

16

situations, a larger punitive damages award may be constitutionally sustainable, particularly as the degree of reprehensibility increases. Accordingly, the ratio of punitive to compensatory damages here satisfies constitutional due process.

### 3. Sanctions for Comparable Misconduct

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." *Gore*, 517 U.S. at 583. This factor loosely parallels the *Bowden* factor for "legislative sanctions," which, as noted above, allows a court to consider the legislative policy reflected by statutory criminal fines. *See* discussion *supra* Part II.A.4. In comparison, the Supreme Court discussed the importance of examining legislative sanctions such as civil fines or imprisonment. *Gore*, 517 U.S. at 583-84. As we have noted, counterfeiting a public document is a felony under Maryland law carrying a penalty of two to ten years' imprisonment. Given the seriousness of Ms. Harvey-Jones's misconduct, we decline to disturb the circuit court's award of punitive damages under this factor. *See* discussion *supra* Part II.A.4.

Accordingly, we hold that the circuit court's punitive damages award was not excessive under federal constitutional law.[5]

---

[5] We express no opinion as to whether the punitive damages award violates Article 24 of the Maryland Declaration of Rights. That argument was neither briefed nor argued by the parties.

III.     EQUITY DEMANDS

In the final section of her appellate brief, Ms. Harvey-Jones argues that the circuit court's judgment should be vacated "because the grossly excessive amount was based on unreliable evidence" and because "[appellant's] ability to pay is relevant in determining whether an award of punitive damages is excessive."  However, these contentions have already been addressed above in our discussion of the *Bowden* factor for "ability to pay."  *See* discussion *supra* Part II.A.2.  We therefore disagree with Ms. Harvey-Jones's contention that the circuit court's judgment was "unjust."

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**